**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TRUSTEES AND FIDUCIARIES OF THE IRON WORKERS DISTRICT COUNCIL (PHILADELPHIA AND VICINITY) BENEFIT AND PENSION PLANS, et al.,** *Plaintiffs*, <br><br> v. <br><br> **CARSON CONCRETE CORPORATION,** *Defendant*. | **CIVIL ACTION NO. 19-1928** |

**MEMORANDUM**

BAYLSON, J.                                                           December 16, 2022

## I.   <u>INTRODUCTION</u>

This is a case pitting the benefit and pension funds of a local construction union against a construction company in privity with each other through a series of collective bargaining agreements.  Based largely on information gleaned from interviews with union-member employees, the benefit and pension funds accuse the construction company of cheating them out of required contributions under the agreements by underreporting the hours worked by its union-member employees.  The Plaintiffs, consisting of benefits and pension funds and the trustees and fiduciaries of those funds, filed this lawsuit under provisions of the federal Employment Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act ("LMRA"), asking that the Court order the defendant construction company, Carson Concrete Corporation ("Carson"), to submit to a payroll audit allowing the Funds to confirm any delinquencies in fund contribution that can be traced to Carson.

Since its filing in May 2019, this case has suffered from a drawn-out discovery battle in which neither side appears to concede an inch.  Multiple attempts by the Plaintiffs to obtain

1

records from Carson have proven unsuccessful, either due to Carson's three-year document retention policy or due to those records being held by third parties.  Conversely, attempts by Carson to depose employees who admitted to having received payments under-the-table have been rebuffed, with the Plaintiffs citing confidentiality.  These and other issues prompted the Court to take steps to push the case forward, including by ordering a limited audit of Carson's books by a Court-appointed auditor and assigning a special master to help with handling the discovery disputes.

Now, over three-and-a-half years later, both sides have filed overlapping Motions for Summary Judgment that are ripe before the Court.  Plaintiffs argue that they are entitled as a matter of law to an expanded audit as well as damages and fees/costs under 29 U.S.C. § 1132(g)(2).  Carson argues that that Plaintiffs have not presented sufficient evidence to show that an audit is required, let alone that it was delinquent in contributing to the funds.

Because there are still multiple genuine issues of material fact presented by the evidence, the Court will deny both motions for summary judgment.  The Court also acknowledges that Carson is entitled to a trial by jury in this case, an issue conceded by Plaintiffs and clearly supported by the case law.

## II.   JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1331 because the case implicates 29 U.S.C. § 1132(a)(3), which allows an ERISA-governed plan participant to seek "appropriate equity relief" under the terms of the plan.

## III.   FACTS AND PROCEDURAL HISTORY

On May 3, 2019, a construction union, several benefits funds and their trustees filed a complaint in this Court asking for equitable and "appropriate" relief against Carson through

2

statutes providing a cause of action under ERISA.  In their nine-page Complaint, the plaintiffs, which at the time also included the union, alleged that Carson was obstructing the commencement of an audit sanctioned to determine if Carson had been deliberately underpaying its contributions to the benefit funds required under their collective bargaining agreements (together, "CBA") during an unknown time period through the present.  Namely, the plaintiffs accused Carson of refusing to provide the auditing firm (Ernst & Young) with access to Carson's books and sought an order requiring Carson to submit to the audit, fees and costs, and any further relief the Court finds appropriate.  The plaintiffs based their allegations on "information gathered in the industry."

The same plaintiffs filed an Amended Complaint on May 30, 2019 that was substantively identical to the original Complaint and addressed solely some typographical errors.  On June 13, 2019, Carson filed a motion to dismiss the Amended Complaint and a motion to compel arbitration.  Carson's sole argument for dismissal was the enforceability of an arbitration clause in the CBA, which it argued precluded the civil action.  The Court held a hearing on both motions on September 16, 2019, and after hearing argument from both sides elected to take the motions under advisement.  On October 19, 2019, Plaintiffs filed the Second Amended Complaint, which is also the active complaint, and in which all claims brought by the union were withdrawn, ostensibly to preclude arbitration.  Otherwise, Plaintiffs did not make substantive additions aside from a more particularized statement as to the application of ERISA and the provisions of the CBA.

On October 24, 2019, Carson filed a motion to dismiss the Second Amended Complaint along with another motion to compel arbitration.  In these motions, aside from reiterating its arguments from its previous motions supporting arbitration, Carson raised additional arguments

that Plaintiffs were equitably estopped from avoiding arbitration under Third Circuit case law despite being non-signatories to the CBA and that the case warrants dismissal because the dropped parties were necessary to proceed with the case under Rule 19 of the Federal Rules of Civil Procedure.  Plaintiffs filed a Response on November 5, 2019, Carson filed a Reply on November 11, 2019, and the Court elected to have oral argument on the issues.

On July 28, 2020, the Court held a status hearing.  After the hearing, the Court issued an order staying all pending motions and ordering a limited audit of Carson's books to be completed by the accounting firm Ernst and Young.  On September 18, 2020, the Court denied Carson's motion for reconsideration regarding the Court's July 28 Order, stating that the parties "agree that Defendant is under an obligation to submit to an audit."  On September 23, 2020, the Court officially denied without prejudice Carson's Motion to Dismiss Second Amended Complaint and Carson's Motion to Compel Arbitration, stating that Carson could renew its motions "if the pending audit upon completion does not result in any settlement of the case."

Following a telephonic conference with the parties, the Court issued an order on November 18, 2020 that, after finding Carson could not complete the audit given the fact that its 2016 and 2017 records had been destroyed, Carson would have to provide an explanation to the Court for why these records were destroyed.  On March 24, 2021, after filing multiple progress updates with the Court, Plaintiffs moved to expand the Court's November 18 Order given Carson's failure to cooperate.  The Court held a telephone conference with the parties on April 20, 2021 and the next day issued an order setting deadlines for dispositive motions, pretrial memorandums and a trial pool date while also addressing several discovery issues related to the audit, emphasizing that Carson should provide an explanation for missing records, and ordering

4

Carson to file an Answer to the Second Amended Complaint.  Carson filed its Answer on May 3, 2021.

On June 10, 2021, the Court issued an order based on "ongoing conferences" with the parties, ordering Plaintiffs to retain and instruct John Roberts, a former FBI agent and an employee of Ernst and Young, to initiate an audit of Carson's books to be paid for by Plaintiffs. In the June 10 Order, the Court permitted Mr. Roberts to act with professional "discretion" in executing the audit, and the Court notified the parties that they could submit objections to the audit once completed.

On August 20, 2021, the Court appointed John Morris, Esq. as a special master for the case to review the pleadings and discovery and prepare a report and recommendation for the Court.  Mr. Morris submitted his initial report to the Court on September 22, 2021, in which he recommended that discovery and case deadlines be suspended until Mr. Roberts' completion of the audit, given the complexity of the case and the severity of its discovery controversies.  The Court obliged through an order on October 12, 2021.

On February 28, 2022, the Full Report of the Special Master was filed with the Court.  In it, Mr. Morris recounted the many discovery problems and the lack of cooperation between the parties and between Carson and the EY audit team.  Mr. Morris concluded that continuation of the court-ordered audit would be futile given Carson's failure to produce documents; that Carson's explanation—its three-year records retention policy—was not credible given Carson's previous run-ins with the IRS and that spoliation was a "clear[]" possibility.  Mr. Morris recommended that the court-ordered audit be terminated, that the costs of the audit be assessed to Carson, and that Plaintiffs should be directed to inform the Court on whether they can extrapolate from witness testimony evidence to support their claims.  Both parties filed

objections to the Full Report and a hearing was held by the Court on March 10, 2022.  An additional evidentiary hearing was held on the matter on April 8, 2022.

On April 12, 2022, Ernst and Young submitted a 14-page Underpayment Calculation to the Court (document not included on the docket), which found that Carson had drastically underpaid its required contributions.  Carson filed objections to the Underpayment Calculation with the Court, and on June 17, 2022 the Court held an evidentiary hearing where John Roberts testified to the methodologies from EY's Underpayment Calculation.  The Court then ordered the parties to submit briefs on the admissibility of the Underpayment Calculation, and for Ernst and Young to submit its supplemental report to the Court, which Plaintiffs filed with the Court on April 24, 2022.

On August 5, 2022, the Court issued an Order for Further Proceedings in which it ruled, among other things, that:

    a) John Roberts was credible and his opinions were substantiated by the documents he reviewed;

    b) Carson's objections to the "audit, testimony and conclusions" were overruled;

    c) "There is substantial credible evidence" supporting Plaintiffs' claims;

    d) Substantial grounds exist to expand the date range of the court-ordered audit as far back as January 1, 2013, and that discussions regarding further production for a supplemental audit report should occur among counsel;

    e) The Funds are charged with submitting a feasibility report regarding the expanded audit, after which a trial will occur should there be any remaining factual disputes.

On August 17, 2022, the Court ordered that EY's supplemental audit report, as discussed in the August 5 Order, should be submitted no later than August 24, 2022 and that the parties

would be permitted to file objections, serve discovery requests, file dispositive motions and file briefs regarding Carson's potential right to a jury trial.  On August 24, 2022, Plaintiffs submitted EY's 8-page supplemental audit report to the Court, covering the years for which Carson was unable to produce payroll records due to its three-year retention policy.

On August 31, 2022, Carson filed a brief supporting its right to a trial by jury, an issue upon which Plaintiffs have conceded.

In September and October 2022, the parties filed cross-motions for summary judgment, which are now fully briefed.

## IV.    DISCUSSION

### A.  Summary Judgment Standard

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law."  Id.  Under Federal Rule of Civil Procedure 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party.  Id. at 255.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular

issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." <u>Id.</u> at 325.

These standards are "no different where there are cross-motions for summary judgment." <u>Lawrence v. City of Philadelphia</u>, 527 F.3d 299, 310 (3d Cir. 2008).  "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that of one is rejected the other is necessarily justified."  <u>Rains v. Cascade Indus., Inc.</u>, 402 F.2d 241, 245 (3d Cir. 1968).

### B.  Relevant ERISA Provisions

Aside from prescribing disclosure rules and standards of conduct governing benefit funds, ERISA provides "a comprehensive civil enforcement scheme" allowing plan participants to enforce rights under an ERISA-governed benefits plan.  <u>Barber v. Unum Life Ins. Co. of Am.</u>, 383 F.3d 134, 139 (3d Cir. 2004) (quoting <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 54 (1987)).  Here, Plaintiffs seek both injunctive relief and judgment at law under separate provisions of ERISA—they seek appropriate injunctive relief under 29 U.S.C. § 1132(a)(3), fees and costs under 29 U.S.C. 1132(g)(1), and damages under 29 U.S.C. § 1132(g)(2).

### C.  Arguments of the Parties

#### a.  The Plaintiffs

Plaintiffs contend that ERISA-governed funds like them possess a right to a broad audit, and that because this Court "accepted" and "endorsed" the results of the audit, the law-of-the-case doctrine precludes "open challenge" to the results of the audit.  Plaintiffs argue essentially that the Court, having admitted the audit after objections from Carson, "endorses" the conclusions of the audit for law-of-the-case purposes.

#### b.  Carson

Carson argues that Plaintiffs' case is based entirely on inadmissible hearsay testimony from an investigator for the underpayments who came to his conclusions based on a series of interviews with unnamed employees of Carson.  Carson also argues that the audit was flawed and that its conclusions were based on assumptions which the auditor had testified "were false." Carson points to several apparent contradictions in the auditor's testimony regarding the audit to support its argument that no reasonable juror could find Plaintiffs had established facts supporting their claims.  Carson does not cite any on-point caselaw.  Plaintiffs argue that despite misgivings about the audit result and even assuming the contradictions with the auditor's testimony, the fact that a court-ordered audit favored Plaintiffs' claims makes clear that at the very least a genuine dispute of material fact exists as to whether an underpayment occurred, in the context of Carson's motion.

Carson argues as well that the audit is no more than an extension of expert testimony from the auditor, who doesn't render a decision on which the court can rely upon.  See Paramount Fin. Comms., Inc. v. Broadridge Inv. Comm. Solutions, Inc., No. 15-0405, 2018 WL 7815202, at 8* (E.D. Pa. Dec. 13, 2018) ("[P]arties may ask their experts to make certain assumptions" but there must be "a basis for those assumptions in the record").  Carson then lists over a dozen criticisms of the audit that it contends raise genuine issues of material fact as to whether an underpayment occurred.

Finally, Carson argues that Plaintiffs' claims must be dismissed on statute of limitations grounds.

### D.  Genuine Issues of Material Fact

While the Court acknowledges the arguments of both parties, the fact of the matter is that several genuine issues of material fact exist in this case, precluding summary judgment for either side.

First, while the Court has acknowledged its opinion as to the credibility of Mr. Roberts and his EY audit team, those findings are not to be treated as findings of fact by the Court. Indeed, the Court stated at the December 8, 2022 hearing for these motions its belief that Mr. Roberts' report should be treated like an expert report. Viewing the report in the light most favorable to either litigant, as is required for cross-motions for summary judgment, the Court holds that a reasonable jury could find for either litigant based on the contents and methodology of the report, as evinced by the strengths emphasized in the Funds' arguments and the weaknesses emphasized in Carson's arguments.

Similarly, while the Court has acknowledged Carson's poor bookkeeping and the resulting complications for this litigation, the Court does not believe that Plaintiffs deserve an adverse inference at this time regarding the documents that it has sought and which Carson has reportedly been unable to produce. Nor should Carson's failure in this respect result in success for Plaintiffs' motion for summary judgment. While Carson has clearly exhibited its ineptitude or inability during this litigation when it comes to producing important payroll records, the Court does not believe that the Funds have produced enough evidence to show entitlement to relief as a matter of law.

Finally, the Court does not find merit in Carson's argument that Plaintiffs have presented only circumstantial evidence to support their cause of action in this case. Looking at the facts in the light most favorable to Plaintiffs, they have done more than produce mere rumors as to the allegations forming the basis of their audit request. The Funds do not need to produce the names

of their confidential informants for the purposes of this motion, although the Court acknowledges that their case will likely be severely hampered at trial should they fail to do so down the road.

### E.  ERISA's Three-Year Statute of Limitations Does Not Preclude Claims

First, the parties appear to be in disagreement as to where the Court should look to apply a statute of limitations in this case.  The Court disagrees with Carson's contention in its motion for summary judgment that the Court should apply 29 U.S.C. § 1113; that provision of ERISA governs claims stemming from a breach of fiduciary duty and not the civil enforcement provision on which Plaintiffs' claims are based here.  29 U.S.C. § 1113 ("No action may be commenced under this subchapter *with respect to a fiduciary's breach of any responsibility, duty, or obligation*. . . .").  Indeed, the Third Circuit recognizes that ERISA "does not set any limitations period for non-fiduciary claims brought pursuant to its civil enforcement provision, 29 U.S.C. § 1132."  Kapp v. Trucking Employees of North Jersey Welfare Fund, Inc., 426 Fed.Appx. 126, 129 (3d Cir. 2011) (quoting Gluck v. Unisys Corp., 960 F.2d 1168, 1179 (3d Cir. 1992)).  Instead, the Third Circuit has instructed trial courts to apply "the statute of limitations for the state claim most analogous to the ERISA claim pursued."  Gluck, 960 F.2d at 1179.  The Court is therefore in agreement with Plaintiffs that the applicable statute of limitations here is the three-year deadline set forth by Pennsylvania's Wage Payment and Collection Law[1] and consistent with the Third Circuit's ruling in Gluck.  Id. at 1181 (holding that "claims for delinquent employer contributions" brought under 29 U.S.C. §1132 are "most analogous" to the WPCL, warranting the statute's three-year limitation).  Carson's arguments specifically citing to other sources of law are inapplicable to this issue.

---

[1] 43 Pa. Stat. § 260.9a(g).

It's clear then that Plaintiffs need a rule to save any claims they may have for actions by Carson that occurred before May 2016.  Among other tolling doctrines, Plaintiffs argue that these claims are saved by the inherent fraud doctrine applicable when "the underlying events are based upon fraud or deceit" and, if applicable, "will toll the statute of limitations until such time as the fraud has been revealed or should have been revealed by the exercise of due diligence by plaintiffs."  Sheet Metal Workers, Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1280 (3d Cir. 1991) (ERISA case).  For the inherent fraud doctrine to apply, a plaintiff must establish that:

1) "[T]he defendant made a representation in regard to a material fact";

2) "[T]he representation was false";

3) "[T]he representation was not actually believed by the defendant";

4) "[T]he plaintiff must have acted on the misrepresentation to his damage";

5) The plaintiff "was not only ignorant of the falsity of the representation, but also reasonably believed it to be true."

Id.

The Court finds that Plaintiffs' claims satisfy the inherent fraud doctrine and therefore their claims are tolled.  Carson misrepresented its fidelity to the requirements of the CBA by continuing to submit remittance reports devoid of language regarding the full scale of payments it made to union-member employees, as could be reasonably found by a jury from the EY audit reports.  The Court finds that the facts here are virtually identical to those in Sheet Metal Workers, Local 19, where the Third Circuit held that the inherent fraud doctrine was applicable to the plaintiff benefit funds' claims that defendant was delinquent in its contributions.  Sheet Metal Workers, Local 19, 949 F.2d at 1280-81.  There, defendant periodically "submitted benefit fund reports containing the numbers of hours of contributions made to the Fund" and the Third

Circuit agreed with the trial court that the failure of the reports to include the hours worked of some union members "constituted misrepresentation of material fact." Id. at 1281. The Third Circuit also agreed that the plaintiff relied on the misrepresentation to its detriment simply by failing to bring file the lawsuit within the statute of limitations, as Plaintiffs did here. Id. And there is no doubt here, as the Third Circuit affirmed for the fund plaintiff in Sheet Metal Workers, Local 19, that Plaintiffs reasonably took Carson's representations that it was in compliance with the CBA to be true despite them being false. Id.

Carson argues that certain "red flags" in the form of notations and loose accounting of hours in remittance reports would have put Plaintiffs on actual notice of potential underpayments. Carson argues that Plaintiffs represented the remittance reports as clear "red flags" in its earlier filings but have now reduced them to mere facts for the statute of limitations issue in this motion. Simply, Carson believes Plaintiffs are trying to have their cake and eat it too.

The Court understands the gist of Carson's reasoning, but the argument is misplaced. By highlighting the remittance reports and other payroll documents that Carson was able to provide to Plaintiffs through discovery and which Carson claims it had provided to Plaintiffs before the lawsuit as part of its routine submissions required under the CBA, Carson essentially asks the Court to find that because the facts upon which Plaintiffs allege a breach of the CBA (the remittance reports) were provided to Plaintiffs, Plaintiffs cannot claim that Carson made any misrepresentations sounding in fraud that would trigger tolling under the inherent fraud doctrine. Carson would have the Court believe that if the tools of fraud are visible to Plaintiffs, it's the Plaintiffs' responsibility to see through any misrepresentations carrying the fraud in order to preserve their claims. But because inherent fraud "is considered 'self-concealing by its nature,'"

it does the Court no good to put such an onus on Plaintiffs, who already have the burden to establish inherent fraud.  Sheet Metal Workers, Local 19, 949 F.2d at 1280 (quoting Gee v. CBS, Inc., 471 F.Supp. 600, 622 (E.D.Pa. 1979), aff'd, 612 F.2d 572 (3d Cir. 1979)).

Because the inherent fraud doctrine began applying at the beginning of Carson's alleged delinquencies, the Court rejects Carson's statute of limitations argument.

### F.  Right to Jury Trial

Carson also filed with the Court a brief supporting its belief that it is entitled to a trial by jury.  Plaintiffs conceded this argument in their submission on the issue.  See ECF Doc. No. 155 Plf. Resp. Br. on Right to Jury Trial, at 2 ("If this matter proceeds to trial, Plaintiffs acknowledge that [Defendant] has a right to a jury trial.").  But whether Carson gets a jury trial here is not necessarily up to the parties—it is decided by the federal legislature and set forth in the ERISA enforcement scheme.  Therefore, it is the duty of the Court to determine this issue by analyzing the statute and relevant case law.

Here, the Court rules that Carson is entitled to a trial by jury, a holding consistent with the Third Circuit's decision in Sheet Metal Workers Local 19 v. Keystone Heating & Air Conditioning, 934 F.2d 35 (3d Cir. 1991) (Alito, J.).  Keystone is a nearly identical case to the one at bar.  In Keystone, plaintiff funds alleged that defendant company had underpaid its fund contributions under the collective bargaining agreement and sought to audit defendant's books, but defendant refused to comply.   Plaintiffs sought to force defendant to submit to an audit, as well as attorneys' fees and "other relief as the Court deems just and proper" through a cause of action under ERISA.  Plaintiffs also demanded a jury trial, which the trial court denied.  On appeal, the Third Circuit held that Congress intended to grant ERISA plaintiffs under 29 U.S.C. § 1132(g) the right to a trial by jury through the statutory language of 1132(g)(2)(E), which

14

states that in actions involving delinquent contributions courts may award the plaintiff pension plan "such other legal or equitable relief as the court deems appropriate."  The Third Circuit in <u>Keystone</u> states that "there is a right to a jury trial for claims implicating 29 U.S.C. § 1132(g)(2). To quote from the statute directly, 1132(g)(2) involves "any action . . . to enforce section 1145" and § 1145 requires employers obligated to make benefit fund contributions under a collective bargaining agreement to "make such contributions in accordance with the terms" of the agreement—that is, it involves an action for delinquent contributions.  Plaintiffs ask for nearly identical relief here.  The <u>Keystone</u> case is on point.

## V.     **CONCLUSION**

Based on the above reasoning, the Court will deny both parties' motions for summary judgment.  The Court also holds that Carson is entitled to a trial by jury.

An appropriate order follows.